UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                    Chapter 7

Simeon Chisara Ohakpo and                                 Case No. 12-66874
Gloria Ngozi Ohakpo,
                                                          Hon. Phillip J. Shefferly
                Debtors.

_____/

## OPINION GRANTING IN PART MOTION
## UNDER SECTION 543(c) OF THE BANKRUPTCY CODE

### Introduction

Prior to the filing of this Chapter 7 case, two state court officers seized two automobiles

belonging to one of the debtors for the purpose of selling them to satisfy a judgment obtained by a

creditor against that debtor. When the bankruptcy case was filed, the state court officers still had

possession of the automobiles. The state court officers filed a motion seeking a determination that

they are custodians of the automobiles entitled to relief under § 543(c) of the Bankruptcy Code. The

debtors objected. For the reasons explained in this opinion, the Court holds that one of the two state

court officers is a custodian entitled to relief under § 543(c), but the other state court officer is not.

### Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (I) and (K), over which the Court

has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

### Procedural History

On December 12, 2012, Simeon and Gloria Ohakpo ("Debtors") filed this Chapter 7 case.

On December 17, 2012, the Debtors filed a motion (ECF No. 11) alleging a violation of the

automatic stay under § 362 of the Bankruptcy Code, and seeking sanctions against a pre-petition

judgment creditor, RBS Citizens, N.A. ("RBS"), and against Victor Lotycz, a court officer in the 35th Judicial District Court for the State of Michigan ("State Court"). The motion alleges that three days before the Chapter 7 petition was filed, Lotycz seized two automobiles from one of the Debtors, Simeon Ohakpo, because of a pre-petition judgment held by RBS against him. The motion further alleges that RBS and Lotycz refused to return the two automobiles to the Debtors upon the filing of the bankruptcy case in violation of the automatic stay of § 362. At the Debtors' request, the Court scheduled an expedited hearing on the motion for December 21, 2012.

Lotycz then filed his own motion (ECF No. 15), along with another individual, Mike Jones. Their motion alleges that both Lotycz and Jones (together referred to as "Court Officers") are custodians of the two automobiles under § 101(11) of the Bankruptcy Code. As custodians, the motion asserts that the Court Officers are entitled to payment, under § 543(c) of the Bankruptcy Code, of their fees and costs of $2,661.00 plus compensation of $911.00 for their services. Further, the motion requests that the Court order the payment to be in the form of a non-dischargeable judgment against the Debtors. At the Court Officers' request, the Court scheduled an expedited hearing on their motion for the same time as the hearing on the Debtors' motion.

On December 21, 2012, the Court held the hearing. By the time of the hearing, some of the issues raised by the two motions had been resolved. First, the Debtors indicated that they were no longer seeking any relief against RBS for violation of the automatic stay, but they were still seeking relief against the Court Officers. Second, the Court Officers acknowledged that they have a legal obligation to turn over the automobiles because they are property of the bankruptcy estate, although they asserted that the automobiles should be turned over to the Chapter 7 Trustee and not to the Debtors. Specifically, they disputed that the Debtors have any standing to request that the

-2-

automobiles be turned over to them. The Court agreed with the Court Officers that they have a duty to turn over the automobiles as property of the estate, and that the automobiles should be turned over to the Chapter 7 Trustee, as the representative of the estate, and not to the Debtors. As to the remaining issues between them, the Debtors still maintained that the Court Officers violated the automatic stay of § 362, and the Court Officers continued to request relief under § 543(c). Because there were disputed issues of fact, the Court scheduled an evidentiary hearing for February 6, 2013 and set a briefing schedule.

On January 18, 2013, the Debtor, RBS and the Court Officers stipulated to the withdrawal of the Debtors' motion for sanctions for violation of the automatic stay against RBS and the Court Officers (ECF No. 33).[1] That left only the Court Officers' motion under § 543(c) of the Bankruptcy Code for disposition by the Court. On February 6, 2013, the Court held the evidentiary hearing. Each of the Court Officers testified, Lotycz at length and Jones very briefly. There were no other witnesses. The Court received into evidence the Court Officers' exhibits 1 through 9. At the conclusion of the hearing, the Court took the motion under advisement. This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

---

[1] Debtors wisely chose to abandon their request for turnover of the vehicles and for sanctions. Sections 542 and 543 clearly require turnover "to the trustee." Unlike Chapter 13, where debtors retain possession of property of the estate under § 1306(b) and pay back their creditors under a court-supervised plan, § 521(a)(4) requires that Chapter 7 debtors must "surrender to the trustee all property of the estate[.]" Compare TranSouth Financial Corp. v. Sharon (In re Sharon), 234 B.R. 676, 686-87 (B.A.P. 6th Cir. 1999) (Sections "1303, 363, 542 and 362 work together to require and enforce the delivery of possession of the car to the Debtor in this Chapter 13 case.").

**Findings of Fact**

Lotycz is a court officer appointed by approximately 20 different courts in Michigan. Lotycz has worked full time as a court officer for approximately 43 years. Among other duties that he performs as a court officer, Lotycz is frequently directed to seize property for the purpose of selling it to satisfy an outstanding judgment. Lotycz gets paid for his services out of the property that he seizes and sells. Typically, after he receives an order directing him to seize property, he investigates the judgment debtor's property, determines what liens might encumber the property, and then physically seizes the judgment debtor's property. Many times Lotycz takes multiple trips to the judgment debtor's premises before he takes physical custody of the judgment debtor's property. Once he seizes the judgment debtor's property, Lotycz issues a receipt to the judgment debtor that inventories the property that he has seized. Lotycz then obtains two appraisals of the property, schedules a public sale of the property, post notices of the sale, and then conducts the sale.

When the sale is complete, Lotycz distributes the proceeds to holders of liens on the seized property, reimburses himself for the costs he incurred in connection with the seizure and sale, and then pays himself compensation that is determined by statute in Michigan.[2] If there are insufficient proceeds from the sale to pay the holders of valid liens on the seized property, then Lotycz does not get reimbursed for his costs nor paid for his services. Lotycz does not ask either the judgment creditor or the judgment debtor to reimburse his costs or pay his fees. Lotycz recovers his costs and receives a fee, all pursuant to statute, only if he is successful in recovering property, selling that

---

[2] Lotycz was not asked about payment to the judgment creditor out of the proceeds of a sale of seized property, but Mich. Ct. R. 3.106(G)(5) provides that, within 21 days of the disposition of the property, the court officer must pay any money received to the court or deposit it in "a trust account for payment to the prevailing party or that party's attorney."

-4-

property, and generating proceeds from the sale of that property in excess of the amount necessary to pay the holders of valid liens on the property.

Lotycz's involvement in this case relates to an October 31, 2012, judgment obtained by RBS in the State Court against Simeon Ohakpo, one of the Debtors, in the amount of $23,146.29. On November 21, 2012, RBS filed a request (Exhibit 1) in the State Court for the issuance of an order directing a court officer to seize Simeon Ohakpo's property for the purpose of selling it to pay the judgment. On November 30, 2012, the State Court issued an order (Exhibit 1) directing "ANY SHERIFF, DEPUTY SHERIFF, OR COURT OFFICER" to seize and sell Simeon Ohakpo's personal property to satisfy the judgment. The order stated that it was to be served by Lotycz as "Court officer/Deputy sheriff" and listed a telephone number for Lotycz. On December 7, 2012, Lotycz signed a certification (Exhibit 1) that he received a copy of the order on that date. Lotycz's signature appears on the line for "Court officer/Deputy sheriff."

On December 9, 2012, Lotycz seized a 2008 Ford Escape and a 2008 Lexus (together referred to as the "Automobiles") from the Debtors' residence. Lotycz was assisted by Jones who provides Lotycz with "backup" when he seizes property. Jones is also a court officer, although Jones' name does not appear anywhere on the State Court order (Exhibit 1) directing the seizure of Simeon Ohakpo's property. After seizing the Automobiles, Lotycz filled out and gave to the Debtors a "PAYMENT RECEIPT AND INVENTORY OF SEIZED PROPERTY" (Exhibit 2) showing the Automobiles. On the same day, Lotycz obtained two appraisals (Exhibits 4 and 5) of the Automobiles, and incurred two bills with Spark's Towing Inc., one (Exhibit 6) for towing the 2008 Ford Escape, and another (Exhibit 7) for towing the 2008 Lexus. Both bills were for $256.00. On the following day, Jones posted a notice of sale of the Automobiles at various locations, and

completed a certificate of posting of notice of sale (Exhibit 3). However, the Automobiles were not sold because the Debtors filed this Chapter 7 case on December 12, 2012.

The Debtors' schedule B lists Simeon Ohakpo as the sole owner of both the 2008 Ford Escape, valued at $5,000.00, and the 2008 Lexus, valued at $19,000.00. The Debtors' schedule D does not list any secured claims against the 2008 Ford Escape, but does list a secured claim against the 2008 Lexus in the amount of $25,673.00. Simeon Ohakpo exempted the 2008 Ford Escape on his schedule C, but did not exempt the 2008 Lexus.

Upon filing the bankruptcy case, the Debtors' counsel contacted RBS and the Court Officers and requested the return of the Automobiles to the Debtors. On December 21, 2012, the Court Officers turned over possession of the Automobiles to the Chapter 7 Trustee. The Court Officers received two additional bills from Spark's Towing Inc., one (Exhibit 9) for towing and storage of the 2008 Ford Escape, and another (Exhibit 8) for towing and storage of the 2008 Lexus. Both bills were for $763.75.

Although the Court Officers' motion alleges that the Court Officers also incurred other costs, there is no evidence of such costs in the record. On cross-examination, Lotycz testified generally that it takes time and money to obtain appraisals, but there is no evidence in the record that Lotycz has ever been billed for or paid for any appraisals of the Automobiles. Lotycz acknowledged that one of the briefs filed by the Court Officers in support of their motion also requests $4,392.50 of attorney fees. But Lotycz could not remember if he had received a bill for any attorney fees and he testified without any contradiction that he had not paid any attorney fees in connection with his seizure of the Automobiles. Finally, he testified that he did not have a signed agreement requiring him to pay any attorney fees.

-6-

The Court finds that the Court Officers incurred actual costs of $2,039.50 with respect to their seizure and possession of the Automobiles. That sum consists of $1,019.75 for the 2008 Ford Escape (Exhibits 6 and 9) and $1,019.75 for the 2008 Lexus (Exhibits 7 and 8). There is insufficient evidence to find that the Court Officers incurred any other costs. The only evidence to support the Court Officers' request for compensation is Lotycz's testimony that $911.00 represents a calculation of the amount that he would have been entitled to receive under a statutory formula in Michigan if there had been a sale of the Automobiles, but the evidence shows that there was no sale of the Automobiles.

### Positions of the Parties

The Court Officers argue that they are custodians within the meaning of § 101(11) of the Bankruptcy Code. As such, they are entitled to an order under § 543(c) of the Bankruptcy Code that protects all of the entities to whom they have become obligated with respect to the Automobiles, and an order providing for payment of reasonable compensation for their services and reimbursement of their costs. Further, the Court Officers request that any award made to them under § 543(c) be in the form of a non-dischargeable judgment against the Debtors.

The Debtors first argue that only Lotycz, and not Jones, was ordered by the State Court to seize Simeon Ohakpo's property. For that reason alone, Jones is not a custodian. Second, the Debtors argue that even Lotycz is not a custodian under § 101(11) because the State Court ordered Lotycz to seize Simeon Ohakpo's property only for the purpose of paying the RBS judgment, and not for the purpose of paying any other creditors of the Debtors. Because the Court Officers are not custodians under § 101(11), they are not entitled to any relief under § 543(c). According to the

-7-

Debtors, any claims that the Court Officers have, whether for reimbursement of their costs or for compensation for their services, are simply pre-petition, unsecured claims in this Chapter 7 case.

## Discussion

### Are the Court Officers "custodians"?

Section 543 of the Bankruptcy Code governs both the rights and obligations of a custodian in possession of a debtor's property at the time a bankruptcy case is filed. The Court Officers may only seek relief under § 543(c) if they are custodians of the Automobiles.

Section 101(11) of the Bankruptcy Code defines custodian as meaning:

(A)     receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;

(B)     assignee under a general assignment for the benefit of the debtor's creditors; or

(C)     trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

The Court Officers do not contend that either of them is a receiver or trustee under § 101(11)(A), nor do they contend that either of them is an assignee under § 101(11)(B). Instead, they contend that they are custodians under § 101(11)(C). Each of them asserts that he is an "agent under applicable law . . . that is appointed or authorized to take charge of the property of the debtor for the purpose of enforcing a lien against such property . . . ."

The first requirement to qualify as a custodian under § 101(11)(C) is that one must be an "agent under applicable law." The Court Officers contend that they are each agents of the State Court because that court has appointed them as court officers. Mich. Ct. R. 3.106(B) describes the

-8-

persons who are authorized in Michigan to seize property. Mich. Ct. R. 3.106(B)(1)(a) includes "court officers" as among the individuals that a court may authorize to seize property. Mich. Ct. R. 3.106(C) provides that "[c]ourt officers may be appointed by a court for a term not to exceed 2 years." Both Lotycz and Jones testified without contradiction that they are appointed as court officers. Therefore, each of them meets the first requirement of § 101(11)(C): they are each agents of the State Court, which has appointed and authorized them to act as court officers.

The second requirement to qualify as a custodian under § 101(11)(C) is that the appointment or authorization must be to "take charge of the property of the debtor." The order (Exhibit 1) issued by the State Court identifies Lotycz as a person authorized to seize Simeon Ohakpo's property. The order states that it is to be served by Lotycz. Lotycz signed the order certifying that he received it. The order makes no mention of Jones. Therefore, the Court concludes that while Lotycz and Jones are both appointed as court officers in Michigan and by the State Court, only Lotycz was appointed or authorized by the State Court order to take charge of property of Simeon Ohakpo to pay the RBS judgment. As a result, only Lotycz fulfills the second requirement of § 101(11)(C): he was appointed or authorized to take charge of the property of Simeon Ohapko.

The third requirement to qualify as a custodian under § 101(11)(C) is that the individual must take charge of the debtor's property for one of the two purposes enunciated by the statute: "for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors." Lotycz concedes that he did not take charge of Simeon Ohakpo's property for the purpose of general administration of such property for the benefit of Simeon Ohakpo's creditors. Instead, he asserts that he took charge of the property for the purpose of enforcing a lien to pay the RBS judgment. To determine whether Lotycz's seizure of the

-9-

Automobiles constitutes enforcement of a lien requires resort first to Michigan law governing seizure of personal property to pay a judgment, and then to the definitional section of the Bankruptcy Code.

The statutory authority in Michigan for a seizure of personal property to satisfy a judgment is contained in Mich. Comp. Laws Ann. § 600.6001: "Whenever a judgment is rendered in any court, execution to collect the same may be issued to the sheriff, bailiff, or other proper officer of any county, district, court district or municipality of this state." Michigan law does not define "execution." Black's Law Dictionary defines execution as a "[f]orm of process whereby an official (usually a sheriff) is directed by way of an appropriate judicial writ to seize and sell so much of the debtor's nonexempt property as is necessary to satisfy a judgment." Black's Law Dictionary 568 (6th ed. 1990). By its terms, the State Court order (Exhibit 1) commands Lotycz to "[s]eize and sell, according to law, any of the personal property" of Simeon Ohakpo "that is not exempt from seizure, as will be sufficient to satisfy the plaintiff's demand, costs, and any statutory fees and expenses." The State Court order is an execution pursuant to Mich. Comp. Laws Ann. § 600.6001.

Mich. Comp. Laws Ann. § 600.6012 provides what happens upon an execution: "Whenever an execution issues against the property of any person, his goods and chattels, lands and tenements, levied upon by such execution, shall be bound from the time of such levy." "The levy occurs when the property is seized, not when the return is made, and the seizure may be accomplished through actual or constructive possession." United States Leather, Inc. v. Mitchell Mfg. Grp., Inc., 276 F.3d 782, 789 (6th Cir. 2002) (citing In re Fees of Court Officer, 564 N.W.2d 509 (1997)). Under Michigan law, when Lotycz seized the Automobiles pursuant to the State Court order, the seizure

constituted a levy and the Automobiles became bound from that time to be sold to pay the debt evidenced by the RBS judgment.

The Bankruptcy Code in turn defines "lien" very broadly. "Lien" is defined in § 101(37) as a "charge against or interest in property to secure payment of a debt or performance of an obligation."

There is no doubt in the Court's mind that the process of execution and levy in Michigan, and the resultant "binding" of seized property, constitutes a charge upon the seized property to pay a debt evidenced by a judgment. This process has all of the attributes of a lien, except for the name, but that is its essence. The lien in such circumstances arises upon the taking of possession of the judgment debtor's property. It is a possessory lien attaching to the seized personal property to pay the judgment debt. The conception of the execution levy as a possessory lien is consistent with case law in Michigan which repeatedly refers to the execution by levy as an "execution lien." See In re Ann Arbor Mach. Co., 278 F. 749, 750 (E.D. Mich. 1922) (describing how the "petitioner obtained a writ of execution upon said judgment, and said execution was, on the same day, levied by the sheriff . . . upon certain personal property belonging to the bankrupt, by seizure thereof under such writ of execution, which then and thereby became a lien on such property"); Williams v. Banana Distrib. Co., 59 F.2d 645, 646-47 (6th Cir. 1932) (discussing a series of cases decided by the Michigan Supreme Court involving priority among creditors, and referring to seizing creditors as having a "lien" on the debtors' property); Berry v. Pattison (In re Berry), 30 B.R. 36, 37 (Bankr. E.D. Mich. 1983) (addressing avoidance of an "execution lien" on a camper that arose when a sheriff executed on a judgment and seized the camper); see also Stack v. Olmstead, 86 N.W. 851, 852-53 (Mich. 1901) (affirming the lower court's finding that a sheriff who executed on property had no

-11-

interest in the seized property because a secured creditor's lien exceeded the value of the property); Kelly v. Fifth Third Bank, No. 307220, 2012 WL 4900561, at *7 (Mich. Ct. App. Oct. 16, 2012) (distinguishing between execution liens and judgment liens as "two different mechanisms by which a judgment creditor can attempt collection on a judgment by going after real property") (quotation marks and citation omitted).

The Court holds that execution and levy upon personal property in Michigan qualifies as a lien under § 101(37) of the Bankruptcy Code.

To recap, Lotycz is a court officer appointed by the State Court and authorized by the State Court order (Exhibit 1) to take charge of personal property of Simeon Ohakpo for the purpose of enforcing a lien against such property. That would appear to be sufficient under § 101(11)(C) to qualify Lotycz as a custodian. However, the Debtors argue that Lotycz is still not a custodian because his seizure of the Automobiles was only for the purpose of enforcing a lien against the Automobiles to pay the RBS judgment and not to pay any of Simeon Ohakpo's other creditors. According to the Debtors, an individual cannot be a custodian, even if they otherwise meet the requirements of § 101(11)(C), unless they are acting for the benefit of *all* of a debtor's creditors and not just for one creditor.

There are some reported cases that support the Debtors' argument. Flournoy v. City Finance (In re Lewis), 12 B.R. 106, 108 (Bankr. M.D. Ga. 1981) held that one can qualify as a custodian under § 101(11)(C) only if they are acting on behalf of the debtor's creditors generally, and cannot qualify if they are acting solely for the benefit of a single creditor. However, unlike the present case, Lewis did not involve an individual appointed or authorized by a court to take possession of a

-12-

debtor's property. Instead, a secured creditor resorted to self help to repossess the debtor's automobile.

Taylor's of St. Petersburg, Inc. v. Gugino (In re Taylor's of St. Petersburg, Inc.), 110 B.R. 593, 596 (Bankr. M.D. Fla. 1990) also held that one in possession of a debtor's property cannot be a custodian under § 101(11)(C) unless they are acting for the benefit of all of the debtor's creditors. That case too is different from the present case because the seizure of the property occurred pre-judgment and, therefore, did not give rise to a lien on the seized property to satisfy the payment of a judgment. Id. at 595.

Both Lewis and Taylor's of St. Petersburg can be easily distinguished from the case at bar. But, more fundamentally, the Court respectfully disagrees with their interpretation of § 101(11)(C), first because it is contrary to a well-established rule of statutory construction known as the rule of the last antecedent, and second because it is contrary to more persuasive case law on this issue.

The Sixth Circuit Court of Appeals has explained the rule of the last antecedent as follows:

> When a word such as a pronoun points back to an antecedent or some other referent, the true referent should generally be the closest appropriate word. Consistent with this principle, the courts ordinarily assume that "a limiting clause or phrase . . . modif[ies] only the noun or phrase that it immediately follows." Although not an "absolute" imperative, the "rule of the last antecedent" creates at least a rough presumption that such qualifying phrases attach only to the nearest available target.

Carroll v. Sanders (In re Sanders), 551 F.3d 397, 399 (6th Cir. 2008) (quoting Barnhart v. Thomas, 540 U.S. 20, 26 (2003)) (other internal quotation marks and citations omitted).

The corollary to this rule is that a modifying clause separated by a comma is read to modify all preceding clauses instead of only the last antecedent. "[T]he last antecedent rule does not apply when the modifying clause is set off by a comma." Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co., No. 11-6306, 2012 WL 3932814, at *4 (6th Cir. Sept. 10, 2012). "'The presence

-13-

of a comma separating a modifying clause in a statute from the clause immediately preceding it is an indication that the modifying clause was intended to modify all of the preceding clauses and not only the last antecedent one, thus making the last-antecedent rule inapplicable.'" Id. (quoting 82 C.J.S. Statutes § 443). The Third Circuit Court of Appeals provides a helpful example of the rule and its corollary:

> Under the last-antecedent rule of construction, therefore, the series "A or B with respect to C" contains two items: (1) "A" and (2) "B with respect to C." On the other hand, under the rule of grammar the series "A or B, with respect to C" contains these two items: (1) "A with respect to C" and (2) "B with respect to C."

Stepnowski v. Commissioner, 456 F.3d 320, 324 n.7 (3d Cir. 2006) (citation omitted).

The last antecedent rule means that the phrase "for the benefit of the debtor's creditors" attaches only to the immediately preceding clause of § 101(11)(C): "for the purpose of general administration of such property." The omission of a comma separating "for the benefit of the debtor's creditors" from the rest of the definition means that this modifying clause was not intended to modify all of the preceding clauses. The Debtors' reading of the statute would be correct if there was a comma preceding the phrase "for the benefit of the debtor's creditors." But there is no comma.

Aside from application of the last antecedent rule, there is case law that supports the Court Officers' interpretation of § 101(11)(C). Skinner v. First Union National Bank (In re Skinner), 213 B.R. 335 (Bankr. W.D. Tenn. 1997) is very similar to the case before the Court. Skinner involved the seizure of a vehicle belonging to a debtor before the filing of a bankruptcy case by the debtor. Id. at 337. The individual seizing the automobile was a sheriff acting pursuant to a writ of execution issued by a state court in Tennessee. In considering whether the sheriff was a custodian, the court noted that the sheriff was "not a receiver or trustee of the debtor's property"; nor "an

-14-

assignee under a general assignment for the benefit of the debtor's creditors"; nor was the sheriff "appointed to take charge of the debtor's property for the purpose of general administration of such property for the benefit of the debtor's creditors."  Id.  Instead, like this case, the sheriff in Skinner could only qualify as a custodian if he was "an agent appointed to take charge of the property of the debtor for the purpose of enforcing a lien against such property."  Id.

The Skinner court reviewed the Tennessee statutes regarding the issuance of a writ of execution on personal property.  Id. at 338-40.  After its review, the court concluded that once the sheriff levied upon the personal property, a lien upon the personal property arose for the purpose of paying the outstanding judgment.  Id. at 340.  The Skinner court referred to the lien as "an execution lien," and distinguished Taylor's of St. Petersburg by noting that in that case, there was no execution lien.  The court then rejected the argument advanced by the Debtors in this case that one can only be a custodian if they have taken possession of a debtor's property for the purpose of enforcing a lien on the property for the benefit of all of the debtor's creditors, and not just the judgment creditor that requested the issuance of a writ of execution on personal property.

> Further, the Court most respectfully disagrees with the conclusion of [the Taylor's of St. Petersburg opinion] that a custodian must take charge of the debtor's property for the benefit of all of a debtor's creditors.  Nothing in the Bankruptcy Code's definition of custodian requires that a custodian hold property for the benefit of all the debtor's creditors.  In fact, the plain words of the statute indicate that a custodian includes an agent authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property.  It would be unusual for all creditors to hold a single lien upon the debtor's property.

Id.

Both the statutory construction rule of the last antecedent and the reasoning of Skinner compel the Court to reject the Debtors' argument that one can only be a custodian if they are acting for the benefit of all of the Debtors' creditors.  Section 101(11)(C) enunciates two distinct purposes

-15-

for taking charge of a debtor's property, either of which may qualify the person in possession as a custodian. One of these purposes contains an additional requirement. The other does not. Where a person has taken charge of the debtor's property "for the purpose of enforcing a lien against such property," that is sufficient by itself. On the other hand, where a person has taken charge of the debtor's property "for the purpose of general administration of such property," then there is a modifying phrase that imposes an additional qualification: the "general administration of such property" must be "for the benefit of the debtor's creditors." This modifying phrase does not apply when the purpose for taking charge of the property is to enforce a lien. Enforcement of the lien may be for one creditor, or for multiple creditors. The statute imposes no minimum number. The Court declines to read an additional qualification into the definition of a custodian under § 101(11)(C) where a person takes charge of a debtor's property for the purpose of enforcing a lien against such property rather than for the purpose of general administration of such property.

In this case, Lotycz is a court officer under applicable law who was appointed by the State Court and was authorized by the November 30, 2012 State Court order to take charge of Simeon Ohakpo's personal property for the purpose of enforcing a lien against such property to pay the judgment owed to RBS. All of the elements of a custodian under § 101(11)(C) are present with respect to Lotycz. It is irrelevant that he was not enforcing the lien for the benefit of all of the Debtors' creditors, but was instead enforcing it only to pay the RBS judgment. The Court holds that Lotycz is a custodian under § 101(11)(C). However, because there is no evidence that Jones was appointed or authorized by the State Court to take charge of Simeon Ohakpo's property to enforce a lien against Simeon Ohakpo's property, Jones is not a custodian under § 101(11)(C).

<u>As a custodian, what relief is Lotycz entitled to under § 543(c)</u>?

As a custodian, Lotycz is entitled to seek relief under § 543(c). The Court Officers' motion is styled as a motion for protective order. It seeks an order awarding $2,661.00 of costs and $911.00 of fees. Section 543(c)(1) and (2) govern this request and provide as follows:

(c)     The court, after notice and a hearing, shall—

    (1)     protect all entities to which a custodian has become obligated with respect to such property or proceeds, product, offspring, rents, or profits of such property;

    (2)     provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian[.]

Although § 543(c)(1) provides that the Court shall "protect all entities to which a custodian has become obligated," the Court Officers' motion does not identify who to protect or how to protect them. The evidence establishes that Lotycz became obligated to Sparks Towing Inc. in the aggregate amount of $2,039.50 with respect to the Automobiles. But the Court Officers' motion does not request the Court to enter an order protecting Sparks Towing Inc. so much as it requests the Court to order payment to the Court Officers in an amount sufficient to enable them to pay Sparks Towing Inc. To that extent, the Court Officers' motion requests relief that is more properly considered under § 543(c)(2) than under § 543(c)(1). The motion does not specify any particular "protection" for Sparks Towing Inc. or for any other entity. Because the Court has not been requested to enter an order "protecting" any "entities" to which the Court Officers have become obligated, the Court concludes that the Court Officers are not entitled to any relief under § 543(c)(1).

On the other hand, the Court Officers' motion makes it clear that they are asking the Court to make an award in their favor providing for the payment of compensation for their services and reimbursement of the costs that they incurred in connection with their seizure and possession of the

-17-

Automobiles. This is precisely the type of relief that § 543(c)(2) envisions. Both the compensation for services and the reimbursement of costs for a court officer who seizes property pursuant to an execution in Michigan are regulated by statute. Mich. Comp. Laws Ann. § 600.2559(1)(h) provides that a court officer is entitled to a fee of "$32.00 plus mileage, plus the actual and reasonable expense for seizing and keeping the property under [an] order" of seizure of property. Mich. Comp. Laws Ann. § 600.2559(j) sets forth a percentage formula for determining compensation when property seized under an order has been sold. Mich. Comp. Laws Ann. § 600.2559(i) also sets forth a percentage formula for a fee in the event that the seized property is not sold because the judgment for which the property has been seized is satisfied prior to sale either "by full payment of the judgment or settlement between the parties . . . ."

Pursuant to Mich. Comp. Laws Ann. § 600.2559(1)(h), Lotycz is entitled to $32.00 and to reimbursement of costs of $2,039.50 he incurred with Sparks Towing Inc. (Exhibits 6 through 9). Lotycz did not introduce any evidence of mileage or actual and reasonable expenses other than the bills for Sparks Towing Inc. As for compensation, Mich. Comp. Laws Ann. § 600.2559(j) does not apply in this case because the Automobiles were not sold. Mich. Comp. Laws Ann. § 600.2559(i) also does not apply here because there is no evidence that the RBS judgment has been satisfied by full payment or by settlement between Simeon Ohakpo and RBS.[3] Therefore, Lotycz is not entitled to any compensation under either Mich. Comp. Laws Ann. § 600.2559(i) or (j). Because the applicable Michigan statute regulating the fee for a court officer, Mich. Comp. Laws Ann. § 600.2559(i) and (j), does not provide for any compensation for the seizure by Lotycz of the

---

[3] The Court Officers' motion urges the Court to "consider the bankruptcy a settlement" for purposes of triggering an entitlement to compensation under Mich. Comp. Laws Ann. § 600.2559(i), but provides no legal or factual basis for the Court to do so.

-18-

Automobiles, then it follows that he is not entitled to any compensation for his services under § 543(c)(2). By definition, there can be no reasonable compensation to be paid under § 543(c)(2) where the applicable non-bankruptcy law statute governing the custodian's compensation provides for the custodian to receive no compensation on the facts of this case.

The Court concludes that Lotycz is not entitled to any relief under § 543(c)(1), but is entitled to relief under § 543(c)(2). Specifically, Lotycz is entitled to an order providing for payment of the costs incurred by Lotycz with Sparks Towing Inc. in the amount of $2,039.50. However, the only fee that Lotycz is entitled to receive as compensation for his services is the $32.00 fee provided for under Mich. Comp. Laws Ann. § 600.2559(1)(h). The Michigan statute does not provide for any additional compensation in circumstances like this case where the seized property was not sold and where there is no evidence of either payment or settlement of the judgment by the judgment debtor.

<u>How does Lotycz get paid his costs under § 543(c)(2)?</u>

The Court Officers' request that any amounts ordered to be paid under § 543(c) be made a non-dischargeable judgment against the Debtors. This request must be denied for several reasons.

First, there is no evidence in the record, and no legal authority cited to the Court, that makes a judgment debtor personally liable at all to a court officer in Michigan for such fees and costs, regardless of whether the fees and costs were incurred before or after the judgment debtor filed a bankruptcy case. Mich. Comp. Laws Ann. § 600.2559 does not make a judgment debtor personally liable for the fees and costs of a court officer seizing property pursuant to an execution to satisfy a judgment. Lotycz himself testified without qualification that when he seizes property to satisfy a judgment, he only gets paid his compensation and costs when he is able to sell the seized property for an amount in excess of the valid liens against such property. When asked point blank if he ever

-19-

asks a judgment debtor to pay for his fees and expenses in seizing and selling property, he answered without hesitation, no. Based upon the Michigan authorities cited by the Court Officers, and Lotycz's uncontroverted testimony, a court officer's fees and costs incurred in seizing personal property under an execution in Michigan are not personam liabilities of the judgment debtor.

Second, even if Michigan law did provide for a court officer to have personal recourse against the judgment debtor, which it does not, there is nothing in the Bankruptcy Code that would make such liability a non-dischargeable debt in a Chapter 7 case. To the extent any fees or costs are incurred pre-petition, they are dischargeable debts under § 727 of the Bankruptcy Code. Section 727(b) provides that a discharge in Chapter 7 discharges the debtor from all pre-petition debts "[e]xcept as provided in section 523 of this title." Section 523 lists the exceptions to discharge. A court officer's fees and costs are not listed among the exceptions to discharge. To the extent any fees or costs are incurred post-petition, they are not liabilities of the debtor at all because the debtor has neither agreed to pay for them nor is the debtor required by Michigan law to pay for them.[4]

Third, the Court Officers' request for a non-dischargeable judgment is also procedurally improper. Under Fed. R. Bankr. P. 7001(6), a proceeding to determine the dischargeability of a debt must be made only by adversary proceeding. The Court Officers' motion is not an adversary complaint.

---

[4] The Court Officers seem to believe that Chapter 7 debtors are always personally liable for payment of administrative expenses. They are not. For example, under § 507(a)(1)(C), Chapter 7 trustees are given priority for their administrative expenses allowed under § 503(b). Under § 726, payment of that expense is made from "property of the estate," not by the debtor.

Although neither Michigan law nor the Bankruptcy Code impose personal liability upon a judgment debtor for the compensation and costs of a court officer, both of them do provide a method for payment of a court officer's compensation and costs. Mich. Comp. Laws Ann. § 600.2559(5) provides for payment of a court officer's compensation and costs as follows: "The fees and expenses allowed under subsection (1)(h) to (k) shall be collected in the same manner as the sum directed to be levied or collected under the order for the seizure of property." This statute authorizes the court officer to collect compensation and costs out of the proceeds of the seized property. Once the judgment debtor's personal property is seized, a levy occurs, and the seized property becomes bound from that time to pay the levy. Upon seizure by the court officer, the judgment debtor's personal property becomes bound to pay not only the judgment itself, but also, pursuant to Mich. Comp. Laws Ann. § 600.2559(5), the compensation and costs of the court officer. In short, the statute imposes an in rem charge upon the seized property for the court officer's compensation and costs even though, as Lotycz acknowledged, the judgment debtor is not personally liable for such compensation and costs.

The Bankruptcy Code then provides a treatment for such compensation and costs in the event of a bankruptcy. Section 543(c)(2) requires the Court to "provide for the payment" of a custodian's reasonable fees and expenses. However, it does not say *who* must make the payment. Where, as here, applicable non-bankruptcy law does not impose personal liability on the debtor for such fees and costs, the provision for payment under § 543(c)(2) must be made from some other source. Under Michigan law, absent bankruptcy, the source of such payment is the proceeds generated by the sale of the seized property. There is no legal basis or sound policy reason why the result should be any different just because the judgment debtor has filed bankruptcy. As Lotycz explained, his

fees and costs are ordinarily paid only out of the excess proceeds generated by the sale of the seized property. If there are no proceeds available, he readily admitted that he does not get paid. Applying these principles to this case, the Court holds Lotycz's costs incurred with respect to the Automobiles shall be paid to him under § 543(c)(2), if at all, out of and to the extent of any proceeds of sale of the Automobiles, consistent with how they would have been paid if the Debtors had not filed bankruptcy.[5]

The Bankruptcy Code provides one other possible source for payment under § 543(c)(2). Section 503 provides for the allowance and payment of expenses of administration of a bankruptcy case from property of the bankruptcy estate. If a party is successful in obtaining allowance of an administrative expense, such claim can be paid out of property of the bankruptcy estate ahead of many other types and classes of claims. Section 507(a)(2) grants priority to administrative expenses allowed under § 503(b) over other claims. Section 726(a)(1) provides that "property of the estate shall be distributed—(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title . . . ."

Section 503(b) does not contain either a definition of an administrative expense or an exclusive list of what constitutes an administrative expense. Instead, § 503(b) contains a list of nine

_____

[5] The Court appreciates that Lotycz has already turned over possession of the Automobiles to the Chapter 7 Trustee. But that fact should not and does not deprive Lotycz of the right to enforce a charge upon the Automobiles the same as he would if he retained possession of them. Lotycz may seek relief from the automatic stay of § 362 to retrieve the Automobiles so that he can enforce his charge upon the Automobiles and obtain payment of his costs under § 543(c)(2). Alternatively, if Lotycz does not seek such relief, and if the Chapter 7 Trustee sells the Automobiles, Lotycz may seek to enforce his charge upon the Automobiles, and satisfy his right to payment under § 543(c)(2), out of any sale proceeds remaining after the Chapter 7 Trustee pays senior valid liens upon the Automobiles as required by law. Finally, Lotycz may move to compel the Chapter 7 Trustee to abandon the Automobiles under § 554(b) so that he may enforce his charge upon the Automobiles.

separate non-exclusive categories of administrative expenses allowable under § 503(b). One of those categories, contained in § 503(b)(3)(E), expressly authorizes the allowance as an administrative expense of the "actual, necessary expenses . . . incurred by— a custodian superseded under section 543 of this title, and compensation for the services of such custodian[.]"

However, just because payment of a custodian's fee and costs is ordered under § 543(c)(2) does not mean that such fees and costs automatically qualify as an allowable administrative expense under § 503(b)(3)(E). In the Sixth Circuit, to qualify as an allowable administrative expense under § 503(b), a party requesting allowance of an administrative expense claim must still demonstrate that the asserted expense provided a "benefit to the estate." In Pension Benefit Guaranty Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.), 126 F.3d 811 (6th Cir. 1997), the Sixth Circuit held that an administrative expense can only be allowed "if (1) it arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the estate." Id. at 816 (citations omitted). See also McMillan v. LTV Steel, Inc., 555 F.3d 218, 225-26 (6th Cir. 2009) (applying "a two-part test to determine whether a claim is entitled to administrative expense priority status under § 503(b)" and quoting the two steps from Sunarhauserman). "[T]he claimant[ ] has the burden of proving that his claim constitutes an administrative expense." McMillan, 555 F.3d at 226 (citation omitted).

In this case, the Court Officers' motion does not expressly request the allowance of an administrative expense under § 503(b)(3)(E), but the memorandum of law filed by the Court Officers in support of the motion does. Unfortunately, the Court Officers, the Debtors, and the Chapter 7 Trustee do not address whether Lotycz's costs incurred with respect to the Automobiles provide a benefit to this estate.

It is conceivable that Lotycz's costs could provide a benefit to the estate. If the Chapter 7 Trustee sells the Automobiles and generates proceeds over and above the amount necessary to pay the valid liens upon the Automobiles and the costs ordered to be paid to Lotycz under § 543(c)(2), then the costs incurred by Lotycz may have provided a benefit to the estate. On the other hand, if the Chapter 7 Trustee does not sell the Automobiles, or does sell them but does not generate any excess proceeds to administer after paying the valid liens on the Automobiles and Lotycz's costs, then it cannot be said that Lotycz's costs provided any benefit to the estate. To further illustrate, suppose a hypothetical custodian incurs $10,000.00 of costs in seizing a judgment debtor's property. Then the judgment debtor files bankruptcy and the trustee administers that property and generates $50,000.00 for the bankruptcy estate. The custodian here may be able to demonstrate that the custodian's costs helped the trustee administer this property. Further, the trustee's administration of this property has now provided a fund to pay the custodian's costs as an administrative expense. Instead, suppose a hypothetical custodian incurs $10,000.00 of costs but the trustee does not administer the seized property because there is no equity in the property for the estate. Although the custodian's costs are the same as in the first hypothetical, the custodian here will not be able to demonstrate that the custodian's costs benefitted the estate. Further, in this hypothetical, the bankruptcy trustee would not have a fund from which to pay the custodian's costs other than out of other property of the estate that was not held by the custodian. In these circumstances, the law does not, nor should it, allow the custodian a $10,000.00 administrative expense to be paid out of other assets in the estate, which were not held by the custodian, to the detriment of those administrative expense claimants who did provide a benefit to the estate in the administration of such other assets.

-24-

Ultimately, Lotycz has the burden to show any benefit to the estate. Lotycz did not introduce any evidence to show that his seizure of the Automobiles provided any benefit to the estate. Because Lotycz has not met his burden to show a benefit, the Court finds that the payment to which Lotycz is entitled under § 543(c)(3) is not allowable as an administrative expense under § 503(b)(3)(E).[6]

The allowance of a § 543(c)(2) payment as an administrative expense claim under § 503(b)(3)(E) only where there is a benefit to the estate, as required by Sunarhauserman, does not harm a custodian, but instead treats the custodian fairly and in a manner consistent with the custodian's rights under state law. As Lotycz explained in his testimony, he does not get paid when he seizes property that does not have sufficient value to pay the valid liens on the seized property. If that is the case outside of bankruptcy, then there is no reason why his rights should be suddenly enhanced just because the judgment debtor filed bankruptcy. In contrast, if there is equity in the seized property for a trustee to administer in a bankruptcy case, then the custodian should be able to obtain a payment order under § 543(c)(3) allowed as an administrative expense under § 503(b)(3)(E). Allowing an administrative expense claim under § 503(b)(3)(E) only where the property in the hands of a custodian when a bankruptcy is filed has value to be administered in the bankruptcy estate ensures that an administrative expense will only be allowed where there is some benefit to the estate.

---

[6] For what it's worth, the Debtors' schedules also tend to show that the payment of Lotycz's costs under § 543(c)(2) should not be allowable as an administrative expense under § 503(b). Specifically, the Debtors' schedule B states that there is no equity in the 2008 Lexus. Simeon Ohakpo exempted the 2008 Ford Escape on his schedule C. It is hard to see how the costs incurred by Lotycz, even though qualifying for payment from the sale of the Automobiles under § 543(c)(2), provided any benefit to the estate that would entitle Lotycz to an administrative expense claim under § 503(b)(3)(E).

To summarize, the Bankruptcy Code does not impose personal liability upon a debtor for an order of payment made to a custodian under § 543(c)(2), let alone a non-dischargeable liability. If there is no personal liability for the debtor for such fees and costs under applicable law outside of bankruptcy, as is the case here, then the payment order required by § 543(c)(2) should be limited to provide for payment to be made only out of the property in the hands of the custodian and only to the extent that there are proceeds from such property to do so, consistent with applicable non-bankruptcy law. On the other hand, a payment ordered under § 543(c)(2) may be allowed as an administrative expense claim under § 503(b)(3)(E) where it is shown to have provided a benefit to the estate. In such circumstances, the payment required under § 543(c)(2) can be made out of other estate property, not just the property previously held by the custodian. Moreover, because it provides a benefit to the estate, payment of such administrative expense is entitled to priority under § 507(a)(2) and § 726(a)(1). This statutory scheme ensures that a court officer who has seized property pre-petition pursuant to an execution and is, therefore, a custodian under the Bankruptcy Code, is treated fairly and in a manner consistent with such court officer's rights under applicable non-bankruptcy law. In short, § 543(b) requires delivery of the property by the custodian to the bankruptcy trustee, § 543(c)(2) provides for the court to order payment of the custodian's compensation and costs, and § 503(b)(3)(E) provides that a payment ordered under § 543(c)(2) may be allowed and paid as an administrative expense in the bankruptcy case so long as a benefit to the estate is shown.[7]

---

[7] A custodian may also request under § 543(d)(1) to be excused from turning over property to the trustee as required by § 543(b)(1) "if the interests of creditors . . . would be better served by permitting [the] custodian to continue in possession, custody, or control of such property[.]" If such request is made and granted, the custodian may continue in possession, custody or control of the property subject to the automatic stay provisions of § 362.

## **Conclusion**

The Court finds that Lotycz is a custodian under § 101(11)(C) of the Bankruptcy Code, but Jones is not. As a custodian, Lotycz may request relief under § 543(c). Because Lotycz does not seek any protection for any entities to whom Lotycz is obligated, the Court denies any relief under § 543(c)(1). The Court grants Lotycz's request for payment under § 543(c)(2) for compensation for his services and reimbursement of his costs, calculated as provided by Michigan statutes, in the amount of $32.00 for fees and $2,039.50 for costs. This payment order constitutes an in rem charge upon the Automobiles, subject only to valid liens and charges having priority pursuant to applicable non-bankruptcy law. The Court denies Lotycz's request that the payment ordered under § 543(c)(2) be made into a non-dischargeable judgment against the Debtors and denies Lotycz's request that the payment ordered under § 543(c)(2) be allowed and paid as an administrative expense under § 503(b)(3)(E). The Court will enter an order consistent with this opinion.

.

Signed on March 04, 2013

                    /s/ Phillip J. Shefferly
                  Phillip J. Shefferly
                  United States Bankruptcy Judge

-27-